UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARQUISE WHITE, #838737,                    Case No. 2:23-cv-196

              Plaintiff,                    Hon. Paul L. Maloney
                                            U.S. District Judge

     v.

D. RUSSO,

              Defendant.
_____/

**REPORT AND RECOMMENDATION**

## I.    Introduction

This Report and Recommendation (R. & R.) addresses Defendant Russo's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 19.)

Plaintiff — state prisoner Marquise White — filed suit pursuant to 42 U.S.C. § 1983 on October 17, 2023.  In his unverified complaint, White asserted that he received inadequate medical care while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  (ECF No. 1, PageID.4-6.)  At this stage of the case, only White's Eighth Amendment and state law claims against Defendant Nurse Practitioner (NP) Russo for providing White with inadequate medical care remain.  (ECF No. 9, PageID.107-108.)

NP Russo now moves for summary judgment, asserting that White did not properly exhaust his administrative remedies.  (ECF No. 19.)  More specifically, NP

Russo argues that White did not properly pursue any grievances against her through Step III of the Michigan Department of Corrections (MDOC) grievance process prior to filing suit.  (ECF No. 19, PageID.139.)  In response, White says that he exhausted his claim against Russo via two grievances filed in 2022 and four grievances filed in 2023.  (ECF No. 30, PageID.208-209.)  But Russo asserts that these grievances did not properly exhaust White's claim; the 2022 grievances did not name Russo and White did not receive the Step III responses to the 2023 grievances until after he filed this lawsuit.  (ECF No. 33, PageID.222-225.)

The undersigned respectfully recommends that the Court deny Defendant Russo's motion for summary judgment.  The undersigned agrees that the majority of the relevant grievances did not exhaust White's Eighth Amendment claim against Russo.  However, one of the grievances that White appealed through Step III of the MDOC's grievance process prior to filing suit complained that medical staff were not treating his knee injury.  And though prison officials could have rejected the grievance for failing to identify the specific medical staff involved, they chose to address and deny White's grievance and appeals on the merits.  As such, it is the undersigned's opinion that prison officials waived the procedural defect in White's grievance and Defendant Russo has not sustained her burden of establishing that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law.

## II.    Factual Allegations

The Court previously summarized White's relevant factual allegations as follows:

Plaintiff alleges that on April 7, 2022, he was transferred to URF and immediately informed Healthcare Services about his left knee pain. (ECF No. 1, PageID.4.) Plaintiff noted that healthcare staff at his prior facility had just diagnosed a musculoskeletal tear in the left knee. (*Id.*) Plaintiff stated that he was in severe pain and that his knee was swollen. (*Id.*) Plaintiff asserted that he could barely walk and that he had to drag his left leg, which felt painful and heavy. (*Id.*)

Plaintiff saw multiple RNs who told him that there was nothing they could do but refer him to the head Nurse Practitioner. (*Id.*) Plaintiff alleges that he submitted 10 to 12 healthcare kites over the course of two months. (*Id.*) Each time, he was told he was on the waiting list. (*Id.*)

Plaintiff was called out to see Defendant Russo on June 22, 2022. (*Id.*) Plaintiff told her about his pain and swelling, and the diagnosis by prior healthcare staff at the St. Louis Correctional Facility. (*Id.*) Defendant Russo told Plaintiff that he was overreacting and that there was nothing wrong with him, "just a little swollen knee." (*Id.*) Plaintiff alleges that Defendant Russo told him to "stop crying like a baby and be a man." (*Id.*) Defendant Russo said that she would refer Plaintiff for an X-ray, and Plaintiff stated that an X-ray would not show tissue damage. (*Id.*) Defendant Russo responded that she knew that there was nothing wrong with Plaintiff, but that she would prove it via an X-ray. (*Id.*, PageID.5.)

Plaintiff had an X-ray on June 23, 2022. (*Id.*) On June 29, 2022, he saw Defendant Russo again, and she reiterated that there was nothing wrong with Plaintiff, and that he should "stop being a baby and grow up." (*Id.*) Plaintiff responded that he was still in pain and his knee was still swollen, and that the X-ray would not show a musculoskeletal tear. (*Id.*) Defendant Russo told Plaintiff to "get out [of] her office." (*Id.*) Plaintiff asked for a bottom bunk detail; Defendant Russo said "no, [you are] ok[,] stop crying." (*Id.*)

Plaintiff continued to submit healthcare kites and wrote grievances about his care. (*Id.*) He was called out on July 13, 2022, and "the same conversation was held with [him] and [Defendant] Russo which was the

3

same results of [Plaintiff] being in pain and her saying [he was] a baby."
(*Id.*)   Defendant Russo told Plaintiff to stop submitting kites because
nothing was going to change.   (*Id.*)   Plaintiff asked for an MRI, and
Defendant Russo told him that the MDOC would not send him for an
MRI for musculoskeletal issues.   (*Id.*)   Defendant Russo told Plaintiff
that she would try to get him physical therapy, stating that there was
nothing wrong with Plaintiff "but we can play games."   (*Id.*)

Plaintiff saw non-party RN Ankiel on September 26, 2022.   (*Id.*)   RN
Ankiel told Plaintiff that "she understands the pain and she [does not]
understand how nothing [has] been done."   (*Id.*)   She gave Plaintiff an
ACE wrap and told Plaintiff that she would schedule him to see a nurse
practitioner.   (*Id.*)

Plaintiff saw non-party Dr. Timothy Stallman on October 6, 2022.   (*Id.*)
At that visit, Dr. Stallman asked Plaintiff how long he had been in pain.
(*Id.*, PageID.6.)    Plaintiff responded for almost a year.   (*Id.*)   Dr.
Stallman told Plaintiff he was "99% sure [Plaintiff had] a
musculoskeletal tear in [his] left knee and someone should have [done]
something" for it.   (*Id.*)   Plaintiff mentioned that he had seen Defendant
Russo; Dr. Stallman responded "wow" and told Plaintiff that he would
refer Plaintiff for an MRI to be sure.   (*Id.*)   Plaintiff had the MRI on
December 12, 2022, and the MRI confirmed the suspected
musculoskeletal tear.   (*Id.*)

Plaintiff saw Defendant Russo again on December 22, 2022, and she told
Plaintiff that he would be having surgery soon and that Plaintiff was
right.   (*Id.*)   Defendant Russo apologized for the "misdiagnosis to the
knee."   (*Id.*)

Plaintiff had surgery in April of 2023.   (*Id.*)   The surgeon told Plaintiff
"they had extra things they had to fix with [his] kneecap because it was
way to[o] long to get [Plaintiff] help."   (*Id.*)   Non-party Dr. Woolever
assured Plaintiff that "he would do all he could but this is an injury that
is [permanently] damage[d]."   (*Id.*)   Dr. Woolever also said that Plaintiff
would receive strength shots to the knee.   (*Id.*)

Subsequently, Defendant Russo removed Plaintiff's medical hold, and
Plaintiff told her that he still needed to see Dr. Woolever for the shots.
(*Id.*)   Defendant Russo responded that Plaintiff did not need them.   (*Id.*)
Plaintiff was then transferred from URF to ECF, where he told a non-
party nurse practitioner about his pain and the shots he was supposed
to have received after surgery.   (*Id.*)   The nurse practitioner contacted

4

Dr. Woolever, who said that Plaintiff did need the shots and that he should see Dr. Woolever immediately.  (*Id.*)

(ECF No. 9, PageID.93-95.)

### III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue.  *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence.  *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

## IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.   Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent.  *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ U, DD.   The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

9

rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

## V.    Analysis

As set forth above, NP Russo contends that White did not properly pursue any grievances against her through Step III of the MDOC's grievance process prior to filing suit. (ECF No. 19, PageID.139; ECF No. 33, PageID.222-225.)  White argues that he exhausted his claim against Russo via the grievances reflected in the table below. (ECF No. 30, PageID.208-209.)

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Grievance Identifier | Staff Named at Step I | Issue Grieved | Resolution | Date of Step III Response |
|---|---|---|---|---|
| URF-22-06-1011-12d<br><br>(ECF No. 19-1, PageID.164-169.) | "Medical" | As of June 16, 2022, White had kited medical more than ten times regarding his severe knee pain and had yet to receive any medical care. | Step I: Denied<br>Step II: Rejected as Untimely<br>Step III: Rejection Upheld | August 25, 2022 |
| URF-22-10-1720-12e<br><br>(*Id.*, PageID.159-163.) | "Medical" | As of October 4, 2022, White had kited medical more than ten times regarding his severe knee pain and had yet to receive any medical care. | Step I: Denied<br>Step II: Denied<br>Step III: Denied | January 18, 2023 |
| SLF-23-07-882-28e<br><br>(*Id.*, PageID.156-158.) | Nurse Smith | White injured himself while he was playing basketball at SLF.  Nurse Smith told him it was a torn achilles.  White was supposed to be given a bottom bunk detail and other accommodations but did not. | Step I: Unclear/Missing<br>Step II: Unclear/Missing<br>Step III: Rejected as Missing Step I and Step II Responses | January 1, 2024 |
| SLF-23-07-886-28e<br><br>(*Id.*, PageID.153-155.) | Dr. Haverbush | White had surgery on July 15, 2023, and the doctor sent him back to SLF with no pain medication.  The doctor also told him that he would need extreme therapy and medical shoes but White only received one round of therapy. | Step I: Unclear/Missing<br>Step II: Unclear/Missing<br>Step III: Rejected as Missing Step I and Step II Responses | January 5, 2024 |
| SLF-23-07-879-28e<br><br>(*Id.*, PageID.150-152.) | "Nurse RN/NP" and Mrs. Stewart | White received an MRI on July 13, 2021.  When he returned to his unit on crutches, he slipped and fell on floors that a porter had just mopped.  White says that he heard a pop. | Step I: Unclear/Missing<br>Step II: Unclear/Missing<br>Step III: Rejected as Missing Step I and Step II Responses | January 5, 2024 |

11

| Grievance Identifier | Staff Named at Step I | Issue Grieved | Resolution | Date of Step III Response |
|---|---|---|---|---|
| URF-23-09-1724-28z<br><br>(*Id.*, PageID.146-149.) | NP Russo | White was taken to medical on July 7, 2023, where he saw NP Russo. She told him he was medically clear for a ride out to another facility. When White responded that he still needed shots for his knee, she refused to give them to him. | Step I: Unclear/Missing Step II Rejection Upheld Step III: Rejection Upheld | December 4, 2023 |

As an initial matter, the undersigned notes that the PLRA makes exhaustion a prerequisite to filing suit, meaning that a plaintiff cannot exhaust his administrative remedies "during the pendency of the action." *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002).  Accordingly, White cannot rely on the grievances that he filed in 2023 (grievance identifiers SLF-23-07-882-28e, SLF-23-07-886-28e, SLF-23-07-879-28e, and URF-23-09-1724-28z) for the exhaustion of his Eighth Amendment claim against NP Russo.  White's grievance records establish that he did not receive the Step III response to those grievances until *after* he filed his complaint. (ECF No. 19-1, PageID.146-158.)

Moving forward, the undersigned notes that a plaintiff must *properly* exhaust the relevant administrative remedy prior to filing suit, meaning that he must exhaust the remedy in accordance with deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-91.  White's grievance identifier URF-22-06-1011-12d was rejected as untimely at Step II of the grievance process. That rejection was upheld at Step III.  And White does not argue that the rejection

was improper.  As such, White cannot rely on grievance identifier <u>URF-22-06-1011-</u><u>12d</u> for the exhaustion of his Eighth Amendment claim against NP Russo.

The undersigned turns finally to grievance identifier <u>URF-22-10-1720-12e</u>. White's grievance records establish that unlike the aforementioned grievances, grievance <u>URF-22-10-1720-12e</u> was appealed and denied on its merits at all three steps of the MDOC's grievance process before White filed suit.  The Step I grievance read as follows:

> On 10-4-22 I was in sever[e] left knee pain which it was hard for me to get up the stairs and top bunk in my housing unit.  I've been kiting medical since March/April about the same situation which my knee is still in pain.  I've sent over 10 healthcare kites and been seen but no help.  I've asked over an[d] over for help[,] I'm in pain in the left knee. Same problem since March/April sending kites week after week.

(ECF No. 19-1, PageID.162.)

White contends that grievance <u>URF-22-10-1720-12e</u> exhausted his Eighth Amendment claim against NP Russo.  (ECF No. 30, PageID.209.)  NP Russo argues that grievance <u>URF-22-10-1720-12e</u> did not exhaust White's claim against her because he did not specifically name Russo, as required by MDOC policy.  (ECF No. 33, PageID.223.)

True, the MDOC's grievance policy provides that when a prisoner fills out a Step I grievance form, "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC Policy Directive 03.02.130 at ¶ S.  But prison officials considered grievance identifier <u>URF-22-10-1720-12e</u> on its merits at all three steps of the grievance process despite the fact that White did not name the specific medical staff involved.  "When prison officials decline to enforce their own

procedural requirements and opt to consider otherwise-defaulted claims on the

merits, so as a general rule will we." *Reed-Bey*, 603 F.3d at 325 (citing *Vandiver v.*

*Correctional Med. Servs., Inc.*, 326 F. App'x 885, 891 (6th Cir. 2009)) (finding that the

plaintiff properly exhausted his deliberate indifference claim despite the fact that his

grievance did not name the specific officials or entities involved in his medical care

because prison officials considered the grievance on its merits).[3]

## VI.    Recommendation

The undersigned respectfully recommends that the Court deny Defendant

Russo's motion for summary judgment (ECF No. 19).  The undersigned agrees that

the majority of the relevant grievances did not exhaust White's Eighth Amendment

claim against Russo.  However, one of the grievances that White appealed through

Step III of the MDOC's grievance process prior to filing suit complained that medical

staff were not treating White's knee injury.  And though prison officials could have

rejected the grievance for failing to identify the specific medical staff involved, they

chose to address and deny White's grievance and appeals on the merits.  As such, it

is the undersigned's opinion that prison officials waived the procedural defect in

White's grievance and Defendant Russo has not sustained her burden of establishing

---

[3]     This rule does not extend to cases wherein the plaintiff names a specific official
in their Step I grievance, such that it would not be obvious to prison officials that the
plaintiff intended to grieve unnamed actors. *See, e.g.*, *Brown v. McCullick*, No. 18-
2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019) (explaining that the holding of
*Reed-Bey* did not apply where the plaintiff named specific officials in his Step I
grievance, and prison officials "naturally assume[d] that [the plaintiff] complied with
the requirement to name those involved").  But those are not the circumstances here.
White's grievance did not name any specific actors, and prison officials considered the
grievance on its merits despite its obvious procedural flaw.

that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law.

If the Court accepts this recommendation, White's Eighth Amendment and state law claims against Defendant Nurse Practitioner (NP) Russo for providing White with inadequate medical treatment will remain.

Dated:   April 8, 2024                                        /s/ *Maarten Vermaat*
                                                                   MAARTEN VERMAAT
                                                                   U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).