UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MARQUISE WHITE #838737,                                Case No. 2:23-cv-196

            Plaintiff,                                 Hon. Paul L. Maloney
                                                       U.S. District Judge
      v.

CHIPPEWA CORRECTIONAL FACILITY, et al.,

            Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses a motion for summary judgment filed by Defendant Nurse Practitioner (N.P.) Danya Russo, ECF No. 67, Plaintiff's response in opposition, ECF No. 68, and Russo's reply, ECF No. 69.

Plaintiff – state prisoner Marquise White – filed an unverified civil complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights while he was incarcerated at Chippewa Correctional Facility (URF).   ECF No. 1.   More specifically, Plaintiff asserts that Defendants were deliberately indifferent to a knee injury he suffered.   *Id.*   In addition to his Eighth Amendment claim, Plaintiff also asserts a state law claim for medical malpractice.   Following this Court's screening opinion, only Plaintiff's Eighth Amendment deliberate indifference and state law medical malpractice claims against N.P. Russo remain.   ECF No. 9, PageID.109

1

In her motion for summary judgment, N.P. Russo argues that Plaintiff has placed no verifying medical evidence in the record to establish a detrimental effect of delayed treatment.   Additionally, she argues that she provided extensive treatment to Plaintiff's knee and that Plaintiff has failed to satisfy the subjective component of his deliberate indifference claim.

In the opinion of the undersigned, there are no genuine dispute of material facts as to Plaintiff's Eighth Amendment claim.   It is respectfully recommended that the Court grant Defendant Russo's motion for summary judgment and dismiss Plaintiff's case.

## II.  Factual Allegations

This Court issued a screening opinion in this case on December 12, 2023.   In that opinion, the Court provided the following summary of Plaintiff's allegations, in pertinent part:

> Plaintiff alleges that on April 7, 2022, he was transferred to URF and immediately informed Healthcare Services about his left knee pain. (ECF No. 1, PageID.4.) Plaintiff noted that healthcare staff at his prior facility had just diagnosed a musculoskeletal tear in the left knee. (*Id.*) Plaintiff stated that he was in severe pain and that his knee was swollen. (*Id.*) Plaintiff asserted that he could barely walk and that he had to drag his left leg, which felt painful and heavy. (*Id.*)
>
> Plaintiff saw multiple RNs who told him that there was nothing they could do but refer him to the head Nurse Practitioner. (*Id.*) Plaintiff alleges that he submitted 10 to 12 healthcare kites over the course of two months. (*Id.*) Each time, he was told he was on the waiting list. (*Id.*)
>
> Plaintiff was called out to see Defendant Russo on June 22, 2022. (*Id.*) Plaintiff told her about his pain and swelling, and the diagnosis by prior healthcare staff at the St. Louis Correctional Facility. (*Id.*) Defendant Russo told Plaintiff that he was overreacting and that there was nothing wrong with him, "just a little swollen knee." (*Id.*) Plaintiff alleges that

2

Defendant Russo told him to "stop crying like a baby and be a man." (*Id.*) Defendant Russo said that she would refer Plaintiff for an X-ray, and Plaintiff stated that an X-ray would not show tissue damage. (*Id.*) Defendant Russo responded that she knew that there was nothing wrong with Plaintiff, but that she would prove it via an X-ray. (*Id.*, PageID.5.)

Plaintiff had an X-ray on June 23, 2022. (*Id.*) On June 29, 2022, he saw Defendant Russo again, and she reiterated that there was nothing wrong with Plaintiff, and that he should "stop being a baby and grow up." (*Id.*) Plaintiff responded that he was still in pain and his knee was still swollen, and that the X-ray would not show a musculoskeletal tear. (*Id.*) Defendant Russo told Plaintiff to "get out [of] her office." (*Id.*) Plaintiff asked for a bottom bunk detail; Defendant Russo said "no, [you are] ok[,] stop crying." (*Id.*)

Plaintiff continued to submit healthcare kites and wrote grievances about his care. (*Id.*) He was called out on July 13, 2022, and "the same conversation was held with [him] and [Defendant] Russo which was the same results of [Plaintiff] being in pain and her saying [he was] a baby." (*Id.*) Defendant Russo told Plaintiff to stop submitting kites because nothing was going to change. (*Id.*) Plaintiff asked for an MRI, and Defendant Russo told him that the MDOC would not send him for an MRI for musculoskeletal issues. (*Id.*) Defendant Russo told Plaintiff that she would try to get him physical therapy, stating that there was nothing wrong with Plaintiff "but we can play games." (*Id.*)

Plaintiff saw non-party RN Ankiel on September 26, 2022. (*Id.*) RN Ankiel told Plaintiff that "she understands the pain and she [does not] understand how nothing [has] been done." (*Id.*) She gave Plaintiff an ACE wrap and told Plaintiff that she would schedule him to see a nurse practitioner. (*Id.*)

Plaintiff saw non-party Dr. Timothy Stallman on October 6, 2022. (*Id.*) At that visit, Dr. Stallman asked Plaintiff how long he had been in pain. (*Id.*, PageID.6.) Plaintiff responded for almost a year. (*Id.*) Dr. Stallman told Plaintiff he was "99% sure [Plaintiff had] a musculoskeletal tear in [his] left knee and someone should have [done] something" for it. (*Id.*) Plaintiff mentioned that he had seen Defendant Russo; Dr. Stallman responded "wow" and told Plaintiff that he would refer Plaintiff for an MRI to be sure. (*Id.*) Plaintiff had the MRI on December 12, 2022, and the MRI confirmed the suspected musculoskeletal tear. (*Id.*)

3

Plaintiff saw Defendant Russo again on December 22, 2022, and she told Plaintiff that he would be having surgery soon and that Plaintiff was right. (*Id.*) Defendant Russo apologized for the "misdiagnosis to the knee." (*Id.*)

Plaintiff had surgery in April of 2023. (*Id.*) The surgeon told Plaintiff "they had extra things they had to fix with [his] kneecap because it was way to[o] long to get [Plaintiff] help." (*Id.*) Non-party Dr. Woolever assured Plaintiff that "he would do all he could but this is an injury that is [permanently] damage[d]." (*Id.*) Dr. Woolever also said that Plaintiff would receive strength shots to the knee. (*Id.*)

Subsequently, Defendant Russo removed Plaintiff's medical hold, and Plaintiff told her that he still needed to see Dr. Woolever for the shots. (*Id.*) Defendant Russo responded that Plaintiff did not need them. (*Id.*) Plaintiff was then transferred from URF to ECF, where he told a non-party nurse practitioner about his pain and the shots he was supposed to have received after surgery. (*Id.*) The nurse practitioner contacted Dr. Woolever, who said that Plaintiff did need the shots and that he should see Dr. Woolever immediately. (*Id.*)

Based on the foregoing, Plaintiff asserts Eighth Amendment claims for deliberate indifference to medical needs, as well as state law medical malpractice claims. (*Id.*, PageID.7.) He seeks reimbursement of all healthcare co-payments, as well as $1 million in damages. (*Id.*)

ECF No. 9, PageID. 93-95.

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).   The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   *State Farm Fire & Cas. Co. v. McGowan,*

4

421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).   The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.   Verification and Rule 56 Materials

As noted above, in ruling on a summary judgment motion, a court must decide whether a genuine issue of material fact remains.   Fed. R. Civ. P. 56(a).   The materials a court may consider in making this assessment are identified in Fed. R. Civ. P. 56(c).   Courts, however, allow a plaintiff to rely on a "verified complaint," which has "'the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment."   *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (quoting *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992)).   To qualify as "verified," a complaint must be executed in a manner that meets the requirements set forth in 28 U.S.C. § 1746.   *Id.*   In contrast, complaints that are unverified are not considered Rule 56 evidence.   *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019).

Here, Plaintiff White filed a complaint that included just over three pages of factual allegations.   ECF No. 1, PageID.4-7. Those claims are summarized above.

In addition, he attached some 63 pages of miscellaneous documents, including medical records, grievances, and kites.    ECF No. 63-1.    White's complaint is unverified.

In response to Russo's motion for summary judgment on the merits, White filed a five-page pleading.    ECF No. 68.    This response is also unverified.    At the end of the response, White declared as follows:    "I have prepared this for the courts to respond to Summary Judgment of D. Russo.    I've sent this in thru [*sic*] the MDOC on 11-25-25.    Respectfully written and certified by Marquise White."    *Id.*, PageID.854.    Title 28, United States Code, Section 1746 requires a verification, certification or statement, under penalty of perjury, that the statements in the pleading are true and correct.    Thus, White's statement at the end of his complaint does not qualify as a verification under Section 1746.    White's response did not include any other materials that might qualify for consideration under Fed. R. Civ. P. 56(c).

Thus, at the first level of analysis, White simply has not provided the Court with anything that would overcome Russo's motion for summary judgment.    "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).    White simply has not shown that his claims are factually supported.

The Court is aware that Plaintiff White is an incarcerated individual who is proceeding *Pro Se* and, accordingly, that he is entitled to some leniency with respect to the technical standards of litigation.    And the Court is also sympathetic to White's

6

knee injury.    But White is responding here to a second motion for summary judgment, as Russo previously filed a motion for summary judgment based on exhaustion.    *See* ECF No. 19 (prior motion for summary judgment); ECF No. 30 (Plaintiff's response); ECF No. 33 (Defendant's reply); ECF No. 34 (previous R. & R.); ECF No. 40 (Order adopting R. & R.)    In addition, Plaintiff White has filed other civil cases in this Court.    *See White v. MDOC*, W.D. Mich. Case No. 1:21-cv-201; W*hite v. Chippewa Correctional Facility, et al.*, W.D. Mich. Case No. 2:23-cv-189. White is no stranger to civil litigation.    Thus, as an initial matter, the undersigned concludes that White has failed to support his claims in a manner that can survive summary judgment.

Nevertheless, the undersigned provides the following analysis of White's substantive claims.

### IV.   Eighth Amendment Deliberate Indifference

White claims that N.P. Russo was deliberately indifferent to his serious knee injury.    The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.    U.S. Const. amend. VIII.    The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.    *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.    *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Id.* at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cty., Tenn.*, 93 F.4th 919, 927 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a

8

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at

837.   The subjective component was recently summarized in *Rhinehart v. Scutt*, 894

F.3d 721 (6th Cir. 2018).   The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference.   Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness."    This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it."   A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful.   A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals."   That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of \*739 *serious* harm."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

9

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell* 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).    He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, White asserts that the care he received from N.P. Russo was inadequate for the severity of his knee injury.    Defendant Russo argues that: (1) Plaintiff has placed no verifying medical evidence in the record which establishes a detrimental effect of the delayed surgery; and (2) the medical records show that Plaintiff received competent and adequate medical attention for his knee injury.    ECF No. 67, PageID.433.    In response, Plaintiff asserts that Defendant Russo failed to order an MRI for his knee injury and instead let Plaintiff walk on the torn meniscus for months.    ECF No. 68, PageID.852.    Plaintiff further argues that the medical records provided include the incorrect injury/incident reports.    *Id.*, PageID.851.

11

White's medical records indicate that he saw N.P. Russo for left knee pain treatment on several occasions.   On July 15, 2022, N.P. Russo entered a physical therapy request for White's continued left knee pain and instability.   ECF No. 67-1, PageID. 482.   On July 27, 2022, N.P. Russo noted that she and White discussed quad exercises and ace bandages while walking to treat White's reported left knee pain. *Id.*, PageID.481.   On, December 22, 2022. White's medical records, shown below, document that MRI results indicated a meniscus tear:

COMPLAINT  **2**       Provider:  Russo, Danya [DR10] NP
Chief Complaint:   Musculoskeletal
Subjective:     Left knee pain
                x-rays negative, MRI meniscus tear

Patient reports continued pain to left knee and states it feels like it moves from side to side when he walks. Patient reports doing daily HEP  for the discomfort.

*Id.*, PageID.436.

MRI completed on 12/12/22 of Left knee
1) Reactive change of bone with prominent areas of cystic degenerative change of bone mid patella. Medial patellar facet demonstrates a large bony prominence with a 1.5 cm area of cartilaginous loss and sclerosis of the margins. Cartilage of the patella demonstrates prominent changes of chondromalacia.

2) Fraying of the free edge of the lateral meniscus along with grade 3 changes of chondromalacia lateral compartment mainly involving the lateral femoral condyle with multiple areas of ulceration and fissure formation. Prominent cystic degenerative change of bone and some osteophyte formation lateral femoral condyle.
Provisional Diagnosis:
     Left knee meniscus tear

**Disposition:**
     Education Provided

*Id.*, PageID.440.

Furthermore, between July and December 2022, White's medical records indicate that he was seen by several other providers about ongoing knee pain.   *Id.*, PageID. 465-77.   On March 16, 2023, N.P. Russo entered a note on White's medical record, shown below, that orthopedic surgery was approved and scheduled for March 21, 2023.

```
Note Date:       03/16/2023 15:41              Provider:   Russo, Danya [DR10] NP   Unit:        ROUND

Chart Review/30 Day Review encounter performed at Non Patient Contact.
Barriers to Communication:  NA- Not a face to face encounter

Administrative Notes:
     ADMINISTRATIVE NOTE   1          Provider:  Russo, Danya [DR10] NP
          ortho surgery 407 approved on 2-17-23. Scheduled for 3-21-23.

          Peripheral tear of lateral meniscus, current injury, left knee,
     Surgery remains necessity
```

*Id.*, PageID.838.    Then, on April 3, 2023, N.P. Russo scheduled a post-op follow-up with White.    *Id.*, PageID.833.

Regarding the objective prong, Plaintiff's claim is that prison medical staff failed to adequately treat his knee injury.    Thus, as stated above, Plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."    *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).    Plaintiff has not pointed to any such evidence.[1]    Accordingly, he fails to meet the objective prong of a deliberate indifference claim.

Even if White could establish the objective prong, in the opinion of the undersigned, N.P. Russo is entitled to summary judgment on the subjective prong. White does not dispute that he received care from N.P. Russo for his knee injury. Rather, he disagrees with her course of treatment and surgery timeline.    White has not established that N.P. Russo's treatment was "so woefully inadequate as to amount

---

[1]    The undersigned acknowledges that White's unverified complaint asserts that "my Doctor at [Sault Ste. Marie hospital] told me they had extra things they had to fix with my knee cap because it was way to [sic] long to get me help."    ECF No. 1, PageID.6.

13

to no treatment at all." *Mitchell* 553 F. App'x at 605.   The medical records before the Court establish a regular pattern of medical care for Plaintiff's torn meniscus that ultimately resulted in surgery for the injury.   Accordingly, White has failed to establish the subjective prong of an Eighth Amendment deliberate indifference claim against N.P. Russo.

## VI.   Recommendation

It is respectfully recommended that the Court GRANT Defendant Russo's motion for summary judgment and dismiss Plaintiff's case because White has failed to support his claims in a manner that can survive summary judgment.

Furthermore, in the opinion of the undersigned, Defendant Russo is entitled to summary judgment because there are no genuine issues of material fact regarding Plaintiff's deliberate indifference claim.

Dated:    June 17, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).